JUERGENS, Appellant,

v.

STRANG, KLUBNIK AND ASSOCIATES, INC., Appellee.*

[Cite as *Juergens v. Strang, Klubnik & Assoc., Inc.* (1994), 96 Ohio App.3d 223.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 65695.

Decided July 25, 1994.

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1994), 71 Ohio St.3d 1429, 642 N.E.2d 637.

224

*Nicola, Gudbranson & Cooper, Matthew T. Fitzsimmons* and *Robert W. Rutkowski,* for appellant.

*Baker & Hostetler, Karen B. Newborn* and *John H.M. Fenix,* for appellee.

HARPER, Judge.

Appellant, Nancy Juergens, appeals from the summary judgment granted by the Cuyahoga County Court of Common Pleas in favor of appellee, Strang, Klubnik and Associates, Inc. ("Strang & Klubnik"). For the reasons that follow, we affirm in part and reverse and remand.

## I

Appellant was hired as a staff accountant in the accounting firm of Strang & Klubnik on January 2, 1991. Appellant analyzed financial statements and pre-

pared individual and corporate tax returns. During the interview preceding appellee's offer of employment, appellant indicated her willingness to work overtime during the tax season (January to April) as long as she was compensated for the time worked. The record shows that appellant was verbally hired after several interviews without a written contract. After appellant was hired, she was given Strang & Klubnik's Personnel Manual, which included a provision for compensation for overtime. It provides as follows:

"Time earned as Company required overtime versus overtime pay. An extra one-half or full day on Saturday in which you are asked by a partner to work. Extra hours or half hours worked during the week or working through lunch does not qualify as comp. time. Any exception to the above must have prior approval by either partner."

Appellee admitted that the Personnel Manual also provides for reimbursement of medical expenses that are not paid by the employee's insurance carrier up to a maximum of $500 per year.

Appellant worked on twelve Saturdays beginning January through April 1991. She was paid overtime for those weeks according to the provisions in the Personnel Manual.

On November 25, 1991, Steven Strang and Gary Klubnik, the two principals of Strang & Klubnik, had a meeting with appellant. In the meeting, appellant was informed that there might be changes in the organization. These changes would result in appellant's assuming more responsibilities to give Strang more time to devote to other things. Appellant was asked, in view of the new changes, whether she would be willing to accept more direct client responsibility. She was given time to think about it. At the meeting, Strang and Klubnik claimed that they were critical of how much time it took appellant to complete some of her assignments. Appellant claimed that Klubnik indicated at the meeting that he had made a mistake with comp. days and that "it will never happen again." Appellant stated that during the meeting she was ordered by Strang to prepare an eight-hour assignment to be finished by the end of the day and another eight-hour assignment completed in four hours on the next day. Appellant was asked if she could handle the assignments, and she responded that she could get the assignments finished as ordered. Appellant later responded that she only agreed to do the assignments because Klubnik was yelling at her during the meeting. Klubnik told her that she was inflexible and difficult to work with. Both principals told appellant to "do whatever it takes to get the job done." Appellant stated that they told her she "needed to have faith in them to take care of me as they take care of all their employees."

On December 2, 1991, another meeting was held to get appellant's response on the company's new plans. She informed the principals that comp. time for

overtime was warranted according to their agreement. She would also prefer to continue what she was doing under their current arrangement. When she discussed the overtime issue, how it would be calculated and the amount, Klubnik became upset and, according to appellant, "Gary, who was sitting to my left in front of Steve's desk, threw his note pad from his chair across to the right of Steve. Gary said 'so, you (I) are putting a gun to our (their) head and telling us what you want.' I responded that I only do not understand the situation and that I am asking only because I don't understand and for clarification because this does not go along with our original agreement, not to give an ultimatum."

Klubnik then informed her that "it's just not going to work out, it's best for us to part ways." She was told that the principals needed a person who can get the job done and take on additional responsibilities.

Appellant·claimed that she requested a letter of reference to assist her in her search for a new job. Klubnik told her that he would write her a nice reference letter. She then turned in her keys, said her goodbyes and left Strang & Klubnik.

Appellant alleged that she suffered severe emotional distress, depression, lost sleep, anxiety attacks, rashes, skin problems and cold sweats as a result of her termination. Appellant did not present any medical report or other evidence to support her claim of severe emotional distress.

## II

For our review, appellant assigns the following errors:

"A. The trial court erred as a matter of law, prejudicial to plaintiff/appellant, by awarding defendant/appellee summary judgment where there were numerous disputes about outcome determinative facts and unresolved issues of credibility.

"B. The trial court erred as a matter of law, prejudicial to plaintiff/appellant, by awarding defendant/appellee summary judgment where there was a genuine issue of material fact as to whether defendant/appellee should have reasonably expected its representations to be relied upon by plaintiff/appellant and whether the expected action or forbearance actually resulted and was detrimental to plaintiff/appellant.

"C. The trial court erred as a matter of law, prejudicial to plaintiff/appellant, by awarding defendant/appellee summary judgment where there was a genuine issue of material fact as to whether an implied contract existed based upon defendant/appellee's oral and written representations made to plaintiff/appellant.

"D. The trial court erred as a matter of law prejudicial to plaintiff/appellant, by awarding defendant/appellee summary judgment where there was a genuine

issue of material fact as to whether there existed just cause for plaintiff/appellant's termination from employment and whether defendant/appellee acted in good faith.

"E. The trial court erred as a matter of law, prejudicial to plaintiff/appellant, by awarding defendant/appellee summary judgment whether there was a genuine issue of material fact as to whether defendant/appellee's conduct was so extreme and outrageous as to cause plaintiff/appellant serious emotional distress.

"F. The trial court erred as a matter of law, prejudicial to plaintiff/appellant, by awarding defendant/appellee summary judgment where there was a genuine issue of material fact as to whether defendant/appellee must reimburse plaintiff/appellant for those of her medical expenses not covered by insurance as provided in the defendant/appellee's employee handbook.

"G. The trial court erred as a matter of law, prejudicial to plaintiff/appellant, by allowing defendant/appellee to file its motion for summary judgment without leave of court, as mandated by Ohio R.Civ.P. 56(B)."

Appellant argues in her first assignment of error that the trial court erred because there are issues of material fact regarding representations made to her. She argues that the Personnel Manual coupled with the representations made to her are sufficient to create an implied contract, thereby rendering appellee's employment-at-will argument a nullity. Appellant also states that there are unresolved issues of credibility.

We begin by stating that the law of summary judgment is settled. A court cannot grant summary judgment unless it establishes that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to only one conclusion when such evidence is viewed most strongly in favor of the nonmovant and the conclusion is adverse to that party. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 587 N.E.2d 825. The possibility of granting the motion for summary judgment forces the nonmoving party to produce sufficient evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. Thus, to overcome a motion for summary judgment, the nonmoving party must present specific facts and not unsupported allegations or blind reliance upon the pleadings, unless the pleadings are such that no further evidence is necessary to warrant a denial of the motion. See *Shaw v. Pollock & Co.* (1992), 82 Ohio App.3d 656, 612 N.E.2d 1295.

Contrary to appellant's understanding of the law of summary judgment, credibility is not an issue for consideration in a motion for summary judgment; hence, the court in determining whether to deny or grant a motion for summary

judgment is not necessarily concerned with who said what, but what was said. Therefore, since appellant's argument that a resolution of credibility is necessary before granting a motion for summary judgment is without legal foundation, it fails.

Appellant argues that her employment fell within the exceptions to Ohio's employment-at-will doctrine as enunciated by the Ohio Supreme Court in *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 103, 19 OBR 261, 263–264, 483 N.E.2d 150, 153–154. Appellant argues that Klubnik represented to her that comp. time was given for overtime in addition to salary. She also quoted the Personnel Manual to support her contention. We do not have the benefit of reviewing the Personnel Manual, since none of the parties saw it fit to include it in the record on appeal. We can only base our decision on what is before us. The portion of the Personnel Manual quoted by both parties states as follows:

"**Comp. time**—This is time earned as company required overtime versus overtime pay. An extra one-half or full day on Saturday in which you are asked by a partner to work. Extra hour or half hours worked during the week or working through lunch does not qualify as comp. time. Any exception to the above must have prior approval by either partner."

We find no support for appellant's argument that the Personnel Manual created an exception to the employment-at-will rule. We also do not find Klubnik's alleged representation of giving comp. time for overtime as a promise worthy of creating a reliance of continuing employment.

It is a long-standing rule that courts refrain from micro-managing a decision of an employer to terminate its employee unless the decision (1) is inconsistent with a written contract of the parties, or (2) is against public policy, or (3) is against the law, *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 234, 551 N.E.2d 981, 986–987; *Phung v. Waste Mgt., Inc.* (1986), 23 Ohio St.3d 100, 23 OBR 260, 491 N.E.2d 1114; *Painter v. Graley* (1992), 84 Ohio App.3d 65, 616 N.E.2d 285, affirmed (1994), 70 Ohio St.3d 377, 639 N.E.2d 51, or (4) tends to negate a reliance of specific verbal promises of job security, *Helmick v. Cincinnati Word Processing, Inc.* (1989), 45 Ohio St.3d 131, 543 N.E.2d 1212, paragraph three of the syllabus. Outside the limited exceptions, Ohio law allows an employer to hire and fire its employees at will:

"Unless otherwise agreed, either party to an oral employment-at-will agreement may terminate the employment relationship for any reason which is not contrary to law. This doctrine has been repeatedly followed in most jurisdictions, including Ohio, which has long recognized the right of employers to discharge employees at will." *Mers*, 19 Ohio St.3d at 103, 19 OBR at 263–264, 483 N.E.2d at 153.

Appellant's argument on promissory estoppel is unpersuasive. Citing *Mers*, the Ohio Supreme Court in *Wing v. Anchor Media, supra,* carefully noted what would trigger the application of the traditional promissory estoppel doctrine to an employment setting when it held that:

"In 1985, we announced a promissory estoppel exception to an employer's unfettered right to discharge an at-will employee. *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150, at paragraph three of the syllabus. *Mers* applied traditional promissory estoppel doctrine to an employment setting:

" ' " '[A] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. * * * ' " ' *Id.* at 104, 19 OBR at 265, 483 N.E.2d at 154, quoting Restatement of the Law 2d, Contracts (1973), Section 90.

"Recently we shed further light on the nature of a promise that can give rise to a promissory estoppel exception to the employment-at-will doctrine. 'Standing alone, praise with respect to job performance and discussion of future career development will not modify the employment-at-will relationship. A demonstration of detrimental reliance on specific promises of job security can create an exception to the employment-at-will doctrine. * * * ' "

This court held in *Kiel v. Circuit Design Technology, Inc.* (1988), 55 Ohio App.3d 63, 67, 562 N.E.2d 517, 521, that:

"In order to prevail upon a promissory estoppel claim, a movant must demonstrate the following four elements which comprise the doctrine: (1) There must be a promise clear and unambiguous in its terms; (2) there must be reliance by the party to whom the promise is made; (3) the reliance must be reasonable and foreseeable; and (4) the party claiming estoppel must be injured by the reliance." See, also, *Russ v. TRW, Inc.* (1991), 59 Ohio St.3d 42, 50, 570 N.E.2d 1076, 1084–1085; *Masek v. Reliance Elec. Co.* (1991), 60 Ohio St.3d 134, 573 N.E.2d 594; *Karnes v. Doctors Hosp.* (1990), 51 Ohio St.3d 139, 142, 555 N.E.2d 280, 283.

It is obvious from appellant's argument that she does not have the full understanding of this court's decisions on the implications of employee handbooks to the employment-at-will doctrine. The implication is simple. In an employment situation where there is an employee handbook, the employer's treatment of its employees must be consistent with the provisions of the handbook, which by the way is the employer's own creation. Thus, where an employer fails to follow, for example, the provision in its employee handbook in disciplining and terminating an employee, it cannot hide under the employment-at-will doctrine as a defense to a wrongful discharge. See *Biskupich v. Manor Nursing Home* (1986),

33 Ohio App.3d 220, 222, 515 N.E.2d 632, 634; see, also, *Mastronianni v. Marymount Hosp.* (Nov. 26, 1986), Cuyahoga App. No. 52178, unreported, 1986 WL 13612.

Therefore, in following the traditional standard of review of employment-at-will cases in the state of Ohio, and examining the record before us, we hold that appellant has failed to establish that there existed more than an employment-at-will relationship between herself and Strang & Klubnik, so we overrule her first, second, third and fourth assignments of error.

## III

Appellant in her fifth assignment of error argues that the trial court erred in granting appellee's motion for summary judgment where there is a genuine issue with regard to whether Strang's and Klubnik's conduct constituted intentional infliction of emotional distress. The law remains that a party seeking to present evidence of infliction of emotional distress to the jury must first present sufficient evidence to the trial court, which must determine as a matter of law whether the party seeking to present the evidence has overcome the requirements of sustaining a motion for summary judgment pursuant to Civ.R. 56(C), when such motion is before the court. See *Stramowski v. Fairview Med. Ctr. & Parking Co.* (Feb. 18, 1993), Cuyahoga App. No. 64152, unreported, 1993 WL 39930.

In employment-related situations, the establishment of infliction of emotional distress requires more than just verbal abuse of "I don't like you, you are ugly." The evidence establishing infliction of emotional distress in an employment situation must follow the guidelines as enunciated by the Ohio Supreme Court in *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666, where the court held:

" ' * * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

" 'The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our

society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.' " *Id.* at 374–375, 6 OBR at 425–427, 453 N.E.2d at 671–672.

 In the instant case, the record is full of allegations, but our search through the record does not reveal any evidence to substantiate the allegations. The closest conduct that could arguably support *improper* conduct would be Klubnik's throwing of his note pad across to where Strang was sitting. It may be a less than desirable conduct, but it does not constitute evidence of outrageous conduct worthy of causing a legal infliction of emotional distress. See *Ganim v. Brown Derby, Inc.* (1990), 67 Ohio App.3d 60, 66–67, 585 N.E.2d 982, 986–987; *Kurtz v. Harcourt Brace Jovanovich, Inc.* (1990), 69 Ohio App.3d 267, 590 N.E.2d 772; see, also, *Jones v. Washington* (1990), 67 Ohio App.3d 176, 586 N.E.2d 228. Appellant's claim that she suffered from "unexplained aches and pains, loss of appetite, expression, nervousness, and a general ability to function," though worthy of sympathy and not uncommon to one who just lost her job, does not rise to the level recognized by law to have been caused by her termination as revealed by the record. See *Sheets v. Rockwell Internatl. Corp.* (1990), 68 Ohio App.3d 345, 588 N.E.2d 271.

It is our opinion that the record supports the trial court's grant of summary judgment, so we overrule appellant's fifth assignment of error.

## IV

 Appellant argues in her sixth assignment of error that the trial court erred by denying her the reimbursement of her medical expenses. We agree. There is no dispute that appellant was entitled to the medical expenses in question. Appellee even admitted in its brief that "appellant made a feeble attempt at one point in time during her employment to produce receipts." Appellant did notify appellee of the expenses, and there is no evidence that appellee was not aware of the existence of the bill or the amount thereof. To deny appellant the right to a reimbursement of expenses which appellee is legally obligated to pay is a denial of simple justice, and that appellee should not be allowed to get away with.

The trial court should have resolved this issue by allowing the reimbursement while still granting the motion for summary judgment, since there is no dispute on the issue and, therefore, nothing to submit to the jury.

■ While granting summary judgment was proper, the denial of the reimbursement of the medical expenses which appellee acknowledges and which we find it is obligated to pay is erroneous. We reject appellee's argument that appellant did not supply all documentations as justifying a denial, since there is no statute of limitations when the payment can be made.

Thus, we sustain that portion of appellant's sixth assignment of error seeking reimbursement of the medical expenses.

V

■ Appellant in her seventh assignment of error argues that the trial court erred by granting appellee's motion for summary judgment without leave of court. We do not understand from what court the leave should come. The acceptance of the motion by the court after the case has been set for pretrial is in itself by leave of court albeit without the formal writing saying "I seek the leave of court." We note that appellant filed her own motion in opposition without objection to the filing of appellee's motion without leave of court. We also note that appellee's motion for summary judgment was pursuant to Civ.R. 56 in its entirety as cited in its brief. Civ.R. 56 includes Section (A), which requires that leave of court be granted after a case has been set for pretrial.

■ We cannot decide as a matter of law the definition of "leave of court" other than to say that the court has the discretion of allowing motions after the time allowed for their filing. Since the acceptance of the motion is by the grace of the court, the decision to accept, therefore, is itself "by leave of court" and thus satisfies the requirement of Civ.R. 56(A). An appellate court cannot interfere with the trial court's decision unless there is a clear showing that the allowance of such motion was prejudicial to appellant's case.

In the instant case, since the allowance of the motion was by leave of court and we find no prejudice, we overrule appellant's sixth assignment of error.

Accordingly, the trial court's grant of summary judgment is affirmed on all issues, but its decision to deny appellant her right to reimbursement of her medical expenses is reversed.

This cause is remanded to that court specifically to order a reimbursement to appellant of her medical expenses, which were not paid by the employee's

insurance carrier up to the amount authorized by the handbook, to which she was entitled but not reimbursed.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

PATTON, P.J., and JAMES D. SWEENEY, J., concur.