DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant Bozidar Popov[1] appeals from the judgment of the Lawrence County Court of Common Pleas, Probate Division, which concluded that appellant was not entitled to keep the interest earned by funds the decedent, appellant's brother, had transferred to appellant before his death. Appellant argues that pursuant to an oral contract between himself and his brother, he was entitled to keep the interest earned by the funds, which are an estate asset.
 {¶ 2} We find appellant's arguments to be without merit and affirm the judgment of the trial court.
 Factual and Procedural Posture {¶ 3} This is the second time this action has appeared before this Court. See In re Estate of Popov, Lawrence App. No. 00CA19,2001-Ohio-2578. In our prior opinion, this Court set forth a detailed recitation of the facts surrounding this action. However, for clarity's sake, we present the following brief summary of facts pertinent to this appeal.
 {¶ 4} Pavel Ivan Popov died on February 3, 1998. At the time of his death, the deceased and his wife, Appellee Glenda Darlene Popov were estranged, appellee having initiated divorce proceedings against decedent in October 1997. Appellee and decedent had been married since November 1981 with one child born issue thereof, Ivan Popov (Ivan), born March 7, 1983.
 {¶ 5} After appellee initiated divorce proceedings against decedent, decedent transferred certain funds to Appellant Bozidar Popov. Decedent had withdrawn the money he transferred to appellant from two certificates of deposit: one jointly owned by himself and appellee, and the other jointly owned by himself, appellee, and Ivan. Decedent transferred the money to appellant by means of a cashier's check in the amount of $215,423.66.
 {¶ 6} Appellant asserted in proceedings before the probate court that the decedent had transferred the money to him in order to create an inter vivos trust benefiting Ivan. However, in March 2000, the probate court found that decedent did not create a trust when he transferred the funds to appellant, and that the funds were an estate asset.
 {¶ 7} Appellant timely appealed the judgment of the probate court, arguing, among other things, that the trial court erred by finding that decedent did not create an effective trust when he transferred the $215,423.66 to appellant. On August 27, 2001, this Court rendered its decision affirming the judgment of the trial court.
 {¶ 8} Following our decision and judgment entry, the administrator of the estate filed a motion seeking the return of the transferred funds to the estate along with any interest earned while the funds were being held in an investment account. Appellant opposed said motion asserting that pursuant to an agreement entered into by himself and decedent at the time of the transfer, he was entitled to keep the interest earned on the original funds. Alternatively, appellant asserted that at minimum, the estate should reimburse him for the taxes he paid on the interest accumulated while the funds were in the investment account under his name. Appellant presented the court with documentation showing that he had paid $15,809 in taxes due to the interest earned on the investment account funded by his brother's money.
 {¶ 9} On August 8, 2002, the probate court entered its judgment finding that the principal and accumulated interest in the investment account were estate assets and should be transferred to the estate. However, the court did award appellant $15,908 to be paid by the estate for taxes he paid on the investment account while it was in his name.[2]
 The Appeal {¶ 10} Appellant timely filed his notice of appeal and presents the following assignments of error for our review.
 {¶ 11} First Assignment of Error: "The court erred in not applying the general law of contracts to a case where one individual entered into an oral contract with another."
 {¶ 12} Second Assignment of Error: "The court erred in not applying the general law of contracts to a case where an individual is owed monies for damages incurred by way of an [sic] constructive contract."
 {¶ 13} Third Assignment of Error: "The court erred in not applying the general law of contracts to a case where under promissory estoppel one party reasonably relied upon a promise."
 {¶ 14} As an aside, we note that our numbering of appellant's assignments of error does not coincide with the numbering appellant employed in his brief before this Court. The assignment of error designated by appellant as his First Assignment of Error is not truly an assignment of error. See App.R. 16(A)(3). Accordingly, we have disregarded appellant's numerical designations.
 I. Standard of Review {¶ 15} Appellant's assignments of error all involve the asserted existence of an oral contract between himself and the deceased regarding the interest earned by the money transferred to appellant and deposited in an investment account. Appellant asserts that when the decedent transferred the funds to appellant, he told appellant that appellant could keep the interest earned on the money as payment for his time and effort in establishing the investment account.
 {¶ 16} This Court's duty is not to make factual findings, weigh the evidence, or judge the credibility of witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder (i.e., probate court) could base its judgment. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. See C.E. Morris Co.v. Foley Const. Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus. This standard of review is highly deferential. See Seasons Coal Co.,Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 461 N.E.2d 1273. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id. at 80.[3]
 II. Creation of a Contract {¶ 17} First, appellant asserts that the trial court erred by denying him the interest earned by the transferred funds because it was the subject of an express contract between appellant and decedent.
 {¶ 18} "A contract is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes a duty." Ford v. Tandy Transp., Inc. (1993),86 Ohio App.3d 364, 380, 620 N.E.2d 996, citing Restatement of the Law 2d, Contracts (1981) 5, Section 1. Simply put, an express contract is an exchange of promises communicated by the parties in some manner to which they agree to be bound. Id., citing Cuyahoga Cty. Hospitals v. Price
(1989), 64 Ohio App.3d 410, 415, 581 N.E.2d 1125. "In order to declare the existence of a contract, both parties to the contract must consent to its terms[,] there must be a meeting of the minds of both parties[,] and the contract must be definite and certain." (Citations omitted.)Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations
(1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134 (citing Columbus, HockingValley Toledo Ry. Co. v. Gaffney (1901), 65 Ohio St. 104,61 N.E. 152; James Ward Co. v. Wick Bros. Co. (1867),17 Ohio St. 159).
 {¶ 19} "Manifestation of mutual assent to an exchange requires that each party either make a promise or begin or render a performance." Ford, supra, citing Restatement of the Law 2d, Contracts (1981) 53, Section 18. The parties may manifest their assent wholly or partly by written or spoken words, by other acts, or by the failure to act. Id., citing Restatement of the Law 2d, Contracts (1981) 55, Section 19(1). "The mutual assent is normally manifested by offer and acceptance. An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it. The manifestation of assent by the offeree constitutes the acceptance." (Citations omitted.) Ford, supra, citing 2 Lord, Williston on Contracts (4 Ed. 1991) 8-9, Section 6:1; Leaseway Distribution Centers, Inc. v. Department of AdministrativeServices (1988), 49 Ohio App.3d 99, 105, 550 N.E.2d 955. "In its legal sense, the word `contract' includes every description of agreement or obligation, whether verbal or written, whereby one party becomes bound to another to pay a sum of money or to perform or omit to do a certain act."Terex Corp. v. Grim Welding Co. (1989), 58 Ohio App.3d 80, 82,568 N.E.2d 739.
 {¶ 20} In the case sub judice, appellant asserts that his brother asked him to open an investment account under appellant's name and deposit the disputed funds into that account for safekeeping. In return for maintaining the funds in the account and the time and effort required in opening up the account, appellant claims that his brother told him he could keep the interest earned on the money.
 {¶ 21} While this purported agreement, as described by appellant, appears to meet the requirements of a contract, we note that only appellant's testimony exists to support that conclusion. The trial court was under no obligation to credit appellant's testimony or take it at "face value," and there exists in the record ample basis for not fully crediting appellant's uncorroborated testimony.
 {¶ 22} First, we consider the circumstances under which the deceased transferred the money to appellant. It would appear from the record that the deceased transferred the money to appellant in an attempt to hide assets from his wife during the divorce proceedings that were pending at the time of the transfer. Second, we consider appellant's arguments surrounding the transfer, which he presented during his first appeal. Appellant asserted that the deceased transferred the funds to appellant in order to create a trust for Ivan's benefit. If that were true, as appellant initially argued, then the interest would have accumulated and been available solely for Ivan's benefit. Thus, appellant's initial position regarding the funds and his current claim that he is entitled to keep the interest are inconsistent.
 {¶ 23} Ultimately, however, issues of witness credibility are left solely for the trial court's consideration. See Seasons Coal, supra. We will not disturb the probate court's determination regarding the credibility of witnesses. As appellant was the sole witness to the alleged contract, the trial court implicitly discounted appellant's testimony by finding that the interest was an estate asset to which appellant had no legal right.
 {¶ 24} Accordingly, the probate court did not err by not applying the terms of the alleged contract as recalled by appellant.
 III. Unjust Enrichment {¶ 25} Next, appellant asserts that the probate court should have determined that a constructive contract existed in order to prevent the estate from being unjustly enriched.
 {¶ 26} "Quasi-Contract is a legal fiction created to prevent an unjust enrichment when a benefit is conferred by a plaintiff onto a defendant with knowledge by the defendant of that benefit and the retention of that benefit under circumstances when it would be unjust to do so without payment." In re Guardianship of Freeman, Adams App. No. 02CA737, 2002-Ohio-6386, at ¶ 29. Under the doctrine of unjust enrichment (i.e., quantum meruit), a party may recover the reasonable value of services rendered in the absence of an express contract if denying such recovery would unjustly enrich the opposing party. See id.; see, also, Hesler v. Skinner, Adams App. No. 99CA682, 2001-Ohio-2454. However, a claim pursuant to quasi-contract is incompatible with claims pursuant to an express contract, and the existence of an express contract between the parties bars recovery under the doctrine of unjust enrichment. See id.; Hesler, supra, citing Paugh Farmer, Inc. v.Menorah Home for Jewish Aged (1984), 15 Ohio St.3d 44, 472 N.E.2d 704.
 {¶ 27} Not only is appellant's claim of an express contract incompatible with his claim of unjust enrichment, he failed to establish the value of his "services" in establishing the investment account, depositing the funds into the account, or maintaining the account. The only costs attributable to appellant for which evidence was presented were the additional taxes he paid due to the interest earned while the money was invested in his name. The probate court awarded appellant the cost of the taxes paid by him.
 {¶ 28} Accordingly, the trial court did not err by denying appellant's unjust enrichment claim that sought the entire sum of interest earned by the investment account.
 IV. Promissory Estoppel {¶ 29} Finally, appellant asserts that the probate court should have applied the doctrine of promissory estoppel and awarded him the interest earned on the transferred monies. Specifically, appellant asserts that he was promised the interest earned by the transferred funds, that he relied on that promise to his detriment, and that his reliance on the promise was reasonable and foreseeable. Accordingly, appellant concludes that the probate court should have awarded him the interest.
 {¶ 30} "Promissory estoppel applies to a promise which the promisor should reasonably expect to induce action on the part of the promisee." Easterling v. Miller (Jan. 8, 1998), Lawrence App. No. 97CA16, citing The Limited Stores, Inc. v. Pan American World Airways, Inc.,65 Ohio St.3d 66, 73, 1992-Ohio-116, 600 N.E.2d 1027. "If the promise does induce the promisee's action and injustice can be avoided only by enforcement of the promise, the promise will be binding." Easterling, supra. Furthermore, the promise must be clear and unambiguous, and the party who asserts the promissory estoppel claim bears the burden to prove, by clear and convincing evidence, all the elements of the claim. Id. (citing Kroll v. Close (1910), 82 Ohio St. 190, 92 N.E. 29, paragraph one of the syllabus; El-Tatawy v. Leader Natl. Ins. Co. (Aug. 29, 1997), Lucas App. No. L-96-281; Juergens v. Strang, Klubnik and Assoc., Inc.
(1994), 96 Ohio App.3d 223, 231, 644 N.E.2d 1066, discretionary appeal not allowed 71 Ohio St.3d 1429, 642 N.E.2d 637).
 {¶ 31} Appellant asserts that the promise from his brother was clear and unambiguous. However, as we already noted, appellant was the sole witness to that alleged promise and the trial court was not required to believe his testimony. Also, while appellant asserts that he detrimentally relied on the alleged promise, we fail to see how. Although he accepted the money and deposited it in an investment account in his name, appellant did not materially change his position in expectation of receiving the interest from his brother's money. In fact, he testified that he did not expect to be in possession of the money for such a lengthy period of time, which is evidence that he did not expect the interest to amount to a large sum of money. Furthermore, any injury suffered by appellant due to the payment of taxes was addressed by the trial court's award of the amount appellant paid in taxes.
 {¶ 32} Accordingly, we find that the trial court did not err by denying appellant's claimed remedy pursuant to promissory estoppel.
 Conclusion {¶ 33} Since appellant's assertions rest solely on his own credibility, the trial court did not err by awarding the estate the interest earned by the funds originally transferred by decedent to appellant; its judgment was not against the manifest weight of the evidence. Therefore, we overrule appellant's assignments of error in toto and affirm the judgment of the trial court.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that appellee recover of appellant costs herein taxed.
The Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the LAWRENCE COUNTY COURT OF COMMON PLEAS, PROBATE DIVISION, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J., and Kline, J.: Concur in Judgment Only.
[1] Alternate spellings of appellant's name occur throughout the record. For purposes of this Decision and Judgment Entry, we have chosen the spelling that appears on the Brief of Appellant filed October 4, 2002.
[2] We note the discrepancy between the amount awarded appellant and the amount he claimed to have paid in taxes on the investment account, $15,908 and $15,809, respectively. This simply appears to be an erroneous transposition of numbers.
[3] We note that this case does not involve the interpretation of a written contract which this Court normally reviews de novo. Rather, this case involves the issue of whether a contract was created, hence we apply the "manifest weight of the evidence" standard of review.