OPINION.
{¶ 1} Defendant-appellant Holander House appeals the judgment of the Columbiana County Municipal Court, Northwestern Division, which awarded plaintiff-appellee Debra Fuson $188 in wages in her small claims case. The issue is whether the employer properly used a wage retraction policy in its employee handbook to decrease the employee's hourly wage for her final two weeks of work due to her alleged failure to work as usual throughout the two-week period. We must determine if the trial court properly characterized one absence and one late day as being excused absences. For the foregoing reasons, the judgment of the trial court is affirmed.
 STATEMENT OF FACTS {¶ 2} In December 2001, Debra Fuson began working at Holander House, a convalescent center in Salem, Ohio. Her hourly wage was $9.04. Ms. Fuson was given an employee handbook, which contains a section on resignation providing in pertinent part:
 {¶ 3} "Any employee who wishes to terminate employment is required to give a written two-week notice of the effective date of his/her resignation. All employees are required to attend work as usual through the resignation period. Employees who fail to give notice and work out their notice period shall be ineligible for rehire and shall forfeit their accumulated vacation hours. Employee's rate of pay shall then be adjusted to the Federal Minimum Wage." Defendant's Exhibit B.
 {¶ 4} She also signed a separate statement reading:
 {¶ 5} "ANY employee who quits without a two week notice or fails to fulfill the notice will be penalized. When notices are disregarded it creates extreme hardship on the facility and it's [sic] residents. The employee's hourly rate will be decreased to minimum wage. The current minimum wage is $5.15." Defendant's Exhibit C.
 {¶ 6} On Wednesday August 7, 2002, Ms. Fuson arrived at work and gave her two-week written notice of her intent to resign, stating that her last day will be August 21, 2002. Defendant's Exhibit A. She then immediately left work on August 7, 2002. However, she later provided a doctor's excuse, making this an excused absence. (Tr. 74, 75, 84, 88). Ms. Fuson then worked eight hours as scheduled on August 8.
 {¶ 7} The next day, she called the charge nurse and advised that her sister was having a medical emergency in that she was having difficulty delivering her baby. The charge nurse said, "Okay," and Ms. Fuson did not come to work as scheduled. (Tr. 70). Ms. Fuson was not scheduled to work on Saturday or Sunday. On Monday August 12, Ms. Fuson called the charge nurse and advised that her sister just gave birth. Ms. Fuson asked if she could be late and the charge nurse said, "That's fine, come in." (Tr. 26). Thus, Ms. Fuson was two hours late.
 {¶ 8} The next day, Ms. Fuson worked eight hours as scheduled. On August 14, Ms. Fuson arrived for work, and she and another employee were immediately called into the offices of the Director and Assistant Director of Nursing. They told her that her services were no longer needed and that her two-week notice would be considered filled. Thus, August 13 was her last day actually worked.
 {¶ 9} Because of the director's belief that Ms. Fuson violated the resignation clause in the employee handbook by missing two days and coming in late once, the wage retraction policy was activated. Rather than decreasing Ms. Fuson's pay to minimum wage from the date of the resignation, Holander House went back to July 28, the first day of the pending pay period. Holander House thus decreased her hourly wage from $9.04 to $5.15 from July 28 through August 10. Due to what they call an error in processing, Ms. Fuson was paid $9.04 per hour for her fourteen and one-half hours of time worked on August 12 and 13. However, they do not seek to recoup this alleged overpayment.
 {¶ 10} During the disputed pay period, from July 28 through August 10, Ms. Fuson states that she worked 48.15 hours which should be paid at $9.04 for a total of $435.28. She was only paid $247.21, due to the wage retraction policy's decrease to minimum wage. Thus, Ms. Fuson claims that she is owed approximately $188. Her rationale is that her absences were excused and that she worked through the resignation period "as usual" until they let her go.
 {¶ 11} On September 4, 2002, Ms. Fuson filed a small claims complaint against Holander House. A trial to the court was held on October 4, 2002. That same day, the court entered judgment for $188 in favor of Ms. Fuson. Holander House filed a request for reconsideration, which was denied. Holander House also filed a request for findings of fact and conclusions of law. On October 9, 2002, the court released its findings and conclusions.
 {¶ 12} The court found that because Holander House excuses absences with a doctor's excuse, Ms. Fuson's August 7 absence was excused. The trial court also found that established practice/usual procedure for calling off from work for a reason other than illness is to call the charge nurse, request permission to be absent, and receive an excused absence if the charge nurse approves the request. The court noted that Ms. Fuson did just this on August 9 when she called off and on August 12 when she called in late. Thus, the court found that these absences were excused.
 {¶ 13} The court concluded that the fact that Ohio is an employment at-will state does not give the employer the right to retroactively and unilaterally reduce the rate of pay for hours already worked prior to submission of her two-week notice. Additionally, and alternatively, the court held that the two-week notice was proper and that Ms. Fuson attended work "as usual" during her notice period because her absences were excused according to established procedures. The court also noted that Ms. Fuson was informed that her notice would be honored. The court concluded that Ms. Fuson should be paid $9.04 per hour for all hours included in her final paycheck. Thus, the court awarded Ms. Fuson $188 for wages improperly calculated.
 ASSIGNMENT OF ERROR {¶ 14} Holander House filed timely notice of appeal on October 15, 2002. Their sole assignment of error provides:
 {¶ 15} "The trial court erred in finding that appellee met her burden of proof and established by the preponderance of the evidence her claim for wages to be paid above the minimum wage rate of pay and thus trial court's decision is against the manifest weight of the evidence, and application of the laws of the State of Ohio, as it applies to the facts of this case."
 {¶ 16} Holander House admits that Ms. Fuson's absence on August 7 was excused due to a doctor's note. However, they contend that her absence on August 9 and her arriving two hours late on August 12 resulted in her failing to fulfill her obligation to "work as usual through the resignation period." They point to testimony that the charge nurse does not have authority to determine whether an absence is excused or not. They conclude that the court violated the employment at-will doctrine as it exists in this state.
 {¶ 17} There are two issues in this case. One, did the court properly apply the present wage retraction policy to the facts of this case? Two, can a wage retraction clause apply to hours worked before the resignation is tendered? If the first question is answered in the affirmative, then technically, the second question is irrelevant for our purposes. Thus, we shall start with the first question.
 {¶ 18} The court interpreted the phrase, "work as usual throughout the resignation period" and determined that Ms. Fuson fulfilled this obligation by labeling the two disputed days (one absent and one late) as excused. We must determine whether the court's decision is supported by the weight of the evidence.
 {¶ 19} Although contract interpretation issues begin as questions of law, which are reviewed under a de novo standard of review, the issue becomes factual when the intent behind certain language is subject to certain facts and circumstances presented at trial. See Inland RefuseTransfer Co. v. Browning-Ferris Indus. of Ohio, Inc. (1984),15 Ohio St.3d 321, 322. In such case, the standard of review is abuse of discretion. Hence, factual findings made in order to apply the law to the facts are not reversed absent an abuse of discretion resulting in a decision that is against the manifest weight of the evidence. Judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed absent an abuse of discretion.C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. In determining if the trial court's decision is against the manifest weight of the evidence, the appellate court must remain guided by the presumption that the trial court's findings of fact are correct.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 79-80.
 {¶ 20} Here, interpretation of the language in the employee handbook requiring the resigning employee to work "as usual" throughout the resignation period is subject to the facts and circumstances presented at trial. What is considered working "as usual" differs from employer to employer. The employer in this case conceded that the absence that was accompanied by a doctor's excuse was considered working as usual. But the one called off day for her sister's medical emergency and the one late day for her sister's delivery were not considered by the employer to be working as usual. The employer did, however, state that these could have been considered excused if Ms. Fuson brought in proof from the hospital where her sister was delivering. (Tr. 80). This contradicts the employer representatives' testimony that there are no judgment calls and that the only excused absences are sick with a doctor's excuse or a funeral with the obituary. Said testimony is then contradicted by the charge nurse who stated that if they look sick, they can go home with an excused absence.
 {¶ 21} The employer's representative claimed that it was not the responsibility of the charge nurse to give permission for absences. (Tr. 74-75). Yet, the court heard testimony from the charge nurse who stated that it is her job to log the call offs. When asked who the employees should report off to, the charge nurse stated, "They're supposed to ask, I always thought the charge nurse." (Tr. 69). She noted that she took the call from Ms. Fuson, that she said, "Okay," and that this was the "usual procedure." (Tr. 70).
 {¶ 22} The court also heard testimony from Ms. Fuson that she was told that in order to call off or call in late, she was to ask the charge nurse. (Tr. 30). She testified that she believed the charge nurse found her excuses acceptable. She figured if they were not acceptable, she would have been informed when she called. (Tr. 26). Ms. Fuson related that she was never informed that she was to seek permission to call off from someone higher than the charge nurse such as the Director of Nursing. (Tr. 28).
 {¶ 23} We also agree that that employer's statement that it would consider her notice fulfilled to be strong evidence of their interpretation of the resignation policy. By making this statement, the employer implied to Ms. Fuson that she worked according to the policy and that by leaving on August 14, she would not ruin her final weeks' wages. If this does not constitute waiver, then it at least constitutes an indication of their position regarding working "as usual."
 {¶ 24} In conclusion, credibility is a matter for the trial court. It was within the trial court's discretion to determine that the employer's established policy and procedure for receiving an excused absence was to call the charge nurse and request permission to call off or to come in late. Thus, the court could properly find that Ms. Fuson worked "as usual" as required by the resignation clause in the employee handbook.
 {¶ 25} Contrary to Holander House's contention, our conclusion does not negate the employment at will doctrine. Rather, it merely upholds a trial court's interpretation of a clause in an employment handbook and that court's weighing of the evidence regarding the employer's procedures for calling off and calling in late. The employment at will doctrine merely means that the employer can terminate an employee at will for any reason except an unlawful one. Mers v. Dispatch PrintingCo. (1985), 19 Ohio St.3d 100, 103. See, also, Juergens v. Strang,Klubnik Assoc., Inc. (1994), 96 Ohio App.3d 223, 231 (explaining the implications of an employee handbook with regards to employment at will).
 {¶ 26} Also contrary to Holander House's suggestion, the trial court did not refuse to enforce the resignation clause. See Mutchler v.Sprenger Ent., Inc. (July 5, 2001), 9th Dist. No. 01CA0061 (finding a similar wage retraction policy enforceable). Rather, the court merely found that Ms. Fuson satisfied its requirements. See Fleisher v. SiffrinResidential Assn., Inc., 7th Dist. No. 01CA169, 2002-Ohio-3002, at ¶ 21-23 (where we noted that when enforcing a resignation clause, the trial court must make factual determinations surrounding the resignation); Legan v. Sudan, Inc. (Nov. 19, 1992), 8th Dist. No. 61466 (finding that it was not against the weight of the evidence for the trial court to find substantial compliance with the wage retraction policy).
 {¶ 27} Under the above analysis, the first issue reviewed is resolved in favor of Ms. Fuson. As such, the trial court's decision is affirmed on this basis. As aforementioned, an affirmance on the first question makes the second question moot because if Ms. Fuson complied with the provision, then it is irrelevant whether the employer can retract pending wages due from before the tendered resignation.
 {¶ 28} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Judgment affirmed.
Waite, P.J., and Donofrio, J., concur.