[Cite as *Gregory v. Reed*, 2011-Ohio-5182.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 96459

## JILL A. GREGORY

PLAINTIFF-APPELLEE

vs.

## BOBBIE J. REED

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-716659

**BEFORE:** Rocco, J., Celebrezze, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** October 6, 2011

**FOR APPELLANT**

Bobbie J. Reed, pro se
26052 Pettibone Road
Oakwood, Ohio   44146


**ATTORNEY FOR APPELLEE**

Anthony L. Manning
20325 Center Ridge Road
Suite 512
Rocky River, Ohio   44116


KENNETH A. ROCCO, J.:

**{¶ 1}** Defendant-appellant Bobbie J. Reed, proceeding pro se, appeals from the trial court order that granted summary judgment to plaintiff-appellee Jill A. Gregory on Gregory's complaint. Gregory sought money due on Reed's written promise to pay a debt upon a settlement made between the parties.

**{¶ 2}** Reed presents a single assignment of error. She argues summary judgment was improper for two reasons, viz., Gregory did not obtain leave of court prior to filing her motion, and the promise was unenforceable. This court does not find her arguments persuasive.

Consequently, Reed's assignment of error is overruled, and the trial court's order is affirmed.

{¶ 3} The record reflects Gregory and Reed met sometime in the mid-1990s and soon thereafter became roommates. Gregory was an engineer, and Reed worked as a hairdresser. Gregory eventually decided to change careers; she suggested to Reed that they begin a hair salon business together. Reed agreed.

{¶ 4} In order to start the business, Gregory furnished funds she had built up for her retirement; she "put in * * * [$]36,000."[1] Gregory also obtained a bank loan and credit card loans. The two women filed documents to establish an equal "partnership with limited liability" with the state of Ohio.

{¶ 5} In running the business, Reed was responsible for the "technical stuff," such as hairstyling, manicures, and maintaining the salon, while Gregory managed the "business stuff"; this included handling the telephone and appointments, bookkeeping, personnel, and tax preparation. The two women had a joint bank account into which they put the income the business generated. From that account, they paid debts and obtained salaries.[2]

---

[1]Quotes are taken from evidentiary material filed in the trial court.

[2]Although it is unclear, the record suggests Gregory paid her original credit

{¶ 6} In 1997, the two women moved into a house located in Oakwood Village, Ohio, which they leased with an option to buy. The homeowner subsequently offered to let them purchase the house. They "put down" $26,000.00 from the business proceeds, and Gregory obtained a $63,900.00 bank loan.

{¶ 7} By late 2002, Gregory tired of the arrangement. She began repaying herself for her original $36,000.00 loan out of the joint account, and told Reed she wished to move out of state. Reed wanted to buy the house for herself, and also wanted to keep the business.

{¶ 8} In order to accomplish these goals, Reed obtained a bank loan for the house purchase in the amount of $104,000.00; she paid Gregory $100,000.00 to own the house outright, and kept $4,000.00 to make a down payment on a new car. Reed also executed a promissory note to Gregory dated December 2, 2002.

{¶ 9} The terms of the promissory note were as follows:

{¶ 10} "I, Bobbie Reed, * * * , promise to pay Jill A. Gregory the sum of $48,000 ($1,000 each month) over a period of 4 years. The first payment is due February 1, 2003. Payments will be due the first of each month with the final payment of $1,000 on January 1, 2007.

---

card loans from this account.

{¶ 11} "The sum is payment for household appliances, a loan for the purchase of house and car, and settlement for the buyout by Bobbie Reed of Redario's Hair Design, P.L.L."

{¶ 12} After Gregory left, Reed made payments on the note and continued the business. However, her "income doubled," so she was taxed at a higher rate than she had been previously. Although she never questioned the validity of the note, she stopped making thousand-dollar payments to Gregory after August 2005. Reed informed Gregory that she could afford to make only ten-dollar payments per month.

{¶ 13} In June 2010, Gregory instituted this action against Reed for breach of contract, seeking payment of the remaining installments due on the written promissory note, i.e., $17,500.00. Reed, proceeding pro se, eventually filed an answer and a counterclaim against Gregory.

{¶ 14} In her answer, Reed asserted the note was unenforceable. She asserted Gregory provided no consideration for it, paid herself any money due from Reed from the joint business account, and obtained Reed's signature on the note "by threats and through force." In her counterclaim, Reed asserted that Gregory had unjustly enriched herself at Reed's expense in the amount of $75,000.00.

{¶ 15} The trial court conducted a pretrial hearing in May 2010, and set the case for trial in October. However, in September, Gregory filed a motion for continuance of trial. The parties informed the court at the final pretrial hearing that discovery had not been completed; therefore, on October 5, 2010, the court issued a journal entry that placed a new discovery "cut-off" date, viz., December 1, and set the case for trial on January 24, 2011.

{¶ 16} On December 3, 2010, Gregory filed a motion for summary judgment on her claim and on Reed's counterclaim. Gregory argued the terms of the note were unambiguous, Reed admitted being in default on it, and Reed could establish neither any defense to Gregory's claim nor a meritorious counterclaim.

{¶ 17} Gregory supported her argument with several exhibits. These included a copy of the note, portions of her own deposition testimony, and portions of deposition testimony Reed provided.

{¶ 18} Previously, Gregory had filed her affidavit in the trial court. Gregory averred that the promissory note was "for the repayment of money lent and the buyout of a business known as Redario's Hair Design, P.L.L. * * * ." Gregory further stated, "[P]ursuant to the promissory note, Bobbie J. Reed agreed to make $1,000.00 per month payments and to pay the note off in full by January 1, 2007," that Reed made her last thousand-dollar payment

on July 1, 2005, that Gregory made demand for the amount due, but that, "as of April 22, 2010, Bobbie J. Reed owes Jill A. Gregory $17,440.00 per the promissory note."

{¶ 19} Reed filed an opposition brief, arguing that summary judgment in Gregory's favor was unwarranted. Reed contended the note was "not legally binding because it lacks consideration," in that Gregory admitted the "agreed amount of money for the sale of the business * * * ha[d] already been documented [by her in an email] as a loan repayment with no interest."

{¶ 20} Reed supported her argument only with citations to Gregory's deposition testimony and a copy of an email sent to her by Gregory. The email was dated December 4, 2003; therein, Gregory explained the reason Reed could not take the payments on the note as tax deductions on her federal income tax form.

{¶ 21} After Gregory filed a reply brief, the trial court granted her summary judgment on both her complaint and on Reed's counterclaim.[3]

{¶ 22} Reed presents one assignment of error in this appeal, as follows.

**"Lower court erred in awarding Plaintiff a summary judgment."**

---

[3]The trial court granted judgment for Gregory in the amount of $17,370.00, allowing for Reed's ten-dollar monthly payments on the note.

**{¶ 23}** Reed presents two arguments in support of her assignment of error.

**{¶ 24}** Reed first contends the trial court contravened Civ.R. 56(A) in allowing Gregory to file her motion for summary judgment without first obtaining the court's permission. Because Reed did not raise this argument in the trial court, she has waived it on appeal. *State v. Williams* (1977), 51 Ohio St.2d 112, 364 N.E.2d 1364, paragraph one of the syllabus; *RBS Citizens, N.A. v. Zigdon*, Cuyahoga App. No. 93945, 2010-Ohio-3511, ¶31-32. In any event, in light of the discretionary language of Civ.R. 56(A), the trial court did not commit plain error in considering Gregory's motion. *Juergens v. Strang, Klubnik & Assoc., Inc.* (1994), 96 Ohio App.3d 223, 234, 644 N.E.2d 1066. Her first contention, consequently, is rejected.

**{¶ 25}** Reed also contends Gregory's note was unenforceable. Reed asserts Gregory provided no consideration for Reed's written promise; thus, Gregory should not be allowed to benefit from Reed's "future labor" at the hair salon. In her appellate brief, Reed claims that this would constitute a violation of the Thirteenth Amendment to the United States Constitution. Since Reed failed to raise any claim of "involuntary servitude" in the trial court, this court need not address it. *First Fed. S. & L. Assn. of Akron v.*

*Cheton & Rabe* (1989), 57 Ohio App.3d 137, 567 N.E.2d 298, paragraph four of the syllabus.

{¶ 26} In presenting her assertion that Gregory gave no consideration for the note, Reed points mainly to her own pleadings and deposition testimony. She submitted no affidavit to support her assertion.

{¶ 27} The law of summary judgment is settled. A court grants a motion for summary judgment if the evidence in the record establishes the following: 1) no genuine issue as to any material fact remains to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) reasonable minds can come to only one conclusion when such evidence is viewed most strongly in favor of the nonmovant and the conclusion is adverse to that party. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 587 N.E.2d 825.

{¶ 28} A properly-supported motion for summary judgment forces the nonmoving party to produce sufficient evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. In order to overcome a motion for summary judgment, therefore, the nonmoving party must present specific facts and not unsupported allegations or blind reliance upon the pleadings, unless the pleadings are such that no further evidence is necessary

to warrant a denial of the motion. See *Shaw v. Pollock & Co.* (1992), 82 Ohio App.3d 656, 612 N.E.2d 1295.

{¶ 29} "Credibility is not an issue for consideration in a motion for summary judgment * * * ." *Juergens.* In determining whether to deny or grant a motion for summary judgment, the court is not concerned with the allegations made, but the evidence presented. Civ.R. 56(C) and (E).

{¶ 30} In construing written contracts, Ohio courts presume that the intent of the parties lies in the language they chose to employ in the agreement. *Shifrin v. Forest City Ent., Inc.* (1992), 64 Ohio St.3d 635, 638, 597 N.E.2d 499, citing *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 509 N.E.2d 411, at paragraph one of the syllabus. The construction of written contracts is a matter of law. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 374 N.E.2d 146, at paragraph one of the syllabus. Courts will give common words in a written instrument their plain and ordinary meaning, unless an absurd result would follow, or unless there is clear evidence of another meaning from either the face or overall contents of the instrument. Id., at paragraph two of the syllabus.

{¶ 31} In this case, the written note Reed and Gregory signed contains the necessary elements of an enforceable contract. Under these circumstances, Reed could dispute her obligation under it only by

demonstrating either that there was no valid consideration, or that Gregory exerted "duress" upon Reed to secure her signature. *Bertrand v. Lax,* Portage App. No. 2004-P-0035, 2005-Ohio-3261, ¶19, citing *Roback v. Roback* (1953), 97 Ohio App. 415, 113 N.E.2d 898. Reed argued both of these defenses in the trial court, but the evidence she supplied demonstrated neither.

{¶ 32} The terms of the note state Reed gave the note to Gregory for consideration that included "household appliances, a loan for purchase of house and car, and settlement for the buyout" of Gregory's share of the business. "The sale was effected, and the debt was owed." *382 Capital, Inc. v. Corso* (Dec. 28, 1999), Franklin App. No. 99AP-156.

{¶ 33} According to Gregory's testimony at her deposition, Reed signed the promissory note for Gregory's previous provision of funds for "costs up front, like for the appraisal and for fixing the furnace and for several other things" relating to the house, for obtaining "[i]nsurance and $300 down to hold the car," and for her share of the business according to a formula that factored in the "annual discretionary income times * * * a multiplier, * * * and you add back in all the costs of the assets, before depreciation, and any * * * deposits or cash. And then, [she] split that in half. And actually that came to much more than $48,000."

{¶ 34} Reed's subsequent assertions that she did not receive sufficient benefit from the bargain could not excuse her from her obligation to reimburse Gregory for giving up her share in the women's partnership. *Costanzo v. Nationwide Mut. Ins. Co.*, Hamilton App. No. C-040482, 2005-Ohio-3170, ¶29 (" 'In Ohio, * * * [t]he court will find consideration for an agreement "is sufficient if it be such as *could* be valuable to the party." *Judy v. Louderman* (1891), 48 Ohio St. 562, 29 N.E. 181, paragraph two of the syllabus * * * .' *Mack v. Thompson* (Aug. 31, 1994), 1st Dist. No. C-930359 * * * .") (Emphasis in original.)

{¶ 35} Moreover, Reed acknowledged she owed Gregory the money due on the note. She indicated she could no longer "afford it." Her assertion on appeal, viz., that working to pay off her debt under these circumstances constitutes "involuntary servitude," is ridiculous.

{¶ 36} Nor did Reed prove that Gregory's "coercive acts" forced Reed to sign the note involuntarily. *Gregory v. Gregory*, Miami App. No. 2006 CA 15, 2007-Ohio-1033. In her deposition, Reed testified that she felt she had to sign the note "or else get kicked out of [the] house and have no place to live and get kicked out of [the] business and have no place to work." She acknowledged, however, that she had no difficulty obtaining a home loan

when she needed to put the house in her name, and she admitted she still worked as a beautician.

**{¶ 37}** Reed also stated the reason that she did not obtain any legal assistance with respect to her purchase of Gregory's share of the business. Reed conceded she simply did not want to "experienc[e] the wrath of Jill."

**{¶ 38}** At her deposition, Gregory denied making any threats to Reed; Gregory testified that she asked Reed if she "wanted to sell the business, or if [she] wanted to buy it." The evidence demonstrated Reed wanted to buy it.

**{¶ 39}** Since the evidence in the record demonstrates no issues of material fact concerning Reed's liability under the written agreement, the trial court properly granted summary judgment to Gregory on her complaint and on Reed's counterclaim. Reed's assignment of error, accordingly, is overruled.

**{¶ 40}** The trial court's order is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR