[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[1] We have sua sponte consolidated the cases numbered C-030801, C-030802, and C-030843, for purposes of argument and decision. We have also removed the cause from the accelerated calendar.
DECISION.
{¶ 1} This case stems from a tragic vehicle accident that occurred on August 11, 2001. After being struck by a truck driven by Frank Eaton, motorcyclist Brian Kremer slid into the lane on his right, where he was struck by defendant-appellee Brian White's car. Brian Kremer died as a result of his injuries. Plaintiff-appellant George Kremer, administrator of the estate of Brian Kremer, filed a complaint against, among others, White, as well as against United States Fidelity Guaranty Company ("USFG") and defendantappellee National Union Fire Insurance Company of Pittsburgh, PA. USFG was an insurance carrier that had issued business-liability and commercial-liability policies to Brian Kremer's employer, Morgan Tire Auto. National Union was an insurance carrier that had issued an excess/umbrella policy to Morgan Tire.
 {¶ 2} In the case numbered C-030801, George Kremer ("Kremer") appeals from the trial court's entry of summary judgment in favor of National Union Fire Insurance Company of Pittsburgh, PA. We note that Kremer has dismissed his appeal from the trial court's entry of summary judgment in favor of USFG. In the case numbered C-030843, National Union has filed a cross-appeal from the same judgment. In the case numbered C-030802, Kremer appeals from the trial court's entry of summary judgment in favor of Brian White.
 {¶ 3} In his first assignment of error, Kremer argues that the trial court erred by granting summary judgment in favor of White on Kremer's negligence claim. We review a grant of summary judgment de novo.[2] In this case, White was entitled to summary judgment only if (1) there was no genuine issue of material fact; (2) White was entitled to judgment as a matter of law; and (3) it appeared that reasonable minds could come to but one conclusion when viewing the evidence in favor of Kremer, and that conclusion was adverse to Kremer.[3]
 {¶ 4} Kremer argues that a question of fact remained as to whether White had violated R.C. 4511.21(A), the assured-clear-distance statute. The statute provides, in part, that no person shall operate a motor vehicle at a speed greater or less than is reasonable or proper, having due regard to the traffic surface, and the width of the street or highway and any other conditions, and that no person shall drive any motor vehicle in and upon any street or highway at a greater speed than will permit the person to bring it to a stop within the assured clear distance ahead.
 {¶ 5} White argues that the evidence showed that he was not negligent because his collision with the decedent's motorcycle was unavoidable. Under the "sudden emergency" exception, a driver does not violate the assured-clear-distance statute where the assured clear distance ahead is, without the driver's fault, suddenly cut down or lessened by the entrance into the driver's path of an obstruction that renders the driver unable, in the exercise of reasonable care, to avoid a collision.[4]
 {¶ 6} In this case, uncontroverted evidence indicated that the decedent, after having been struck by Eaton's pickup truck, lost control of his motorcycle and crossed into White's path, and that White could have done nothing to avoid colliding with the motorcycle. Kremer failed to meet his reciprocal burden to set forth specific facts showing that there was a genuine issue for trial on his claim against White. Following our examination of the facts in a light most favorable to Kremer, we hold that summary judgment in favor of White was appropriate.[5] We overrule Kremer's first assignment of error.
 {¶ 7} In his second assignment of error, Kremer argues that the trial court erred by granting summary judgment in favor of National Union. The National Union policy for Morgan Tire contained a Coverage A, which provided excess insurance, and a Coverage B, which provided umbrella liability insurance. The underlying insurance that Kremer alleged to be applicable to his claim was the USFG business auto policy issued to Morgan Tire.
 {¶ 8} First, we must decide whether the provisions of R.C.3937.18 applied to the National Union policy. We must look to the statutory law in effect at the time the parties entered into the insurance contract.[6] The policy in this case was in effect from January 1, 2001, to January 1, 2002. Accordingly, we conclude that the Am.Sub.S.B. No. 267 version of R.C. 3937.18
("former R.C. 3937.18"), which became effective September 21, 2000, governed this action.[7]
 {¶ 9} Former R.C. 3937.18 required that uninsured/underinsured ("UM/UIM") coverage be made available under automobile liability or motor vehicle liability policies of insurance. Subsection (L) defined such policies in these terms:
 {¶ 10} "(1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance;
 {¶ 11} "(2) Any umbrella liability policy of insurance written as excess over one or more policies described in division (L)(1) of this section."
 {¶ 12} Because the National Union umbrella policy was governed by former R.C. 3937.18(L)(2), National Union was required to provide UM/UIM coverage under the policy unless there was an express waiver of coverage by the insured pursuant to former R.C. 3937.18(C).
 {¶ 13} In this case, the National Union policy purported to exclude UM/UIM coverage. The policy contained an endorsement that provided the following: "Under Coverages A and B, this insurance does not apply to any obligation of the Insured under any `No-Fault,' `Uninsured Motorist,' or `Underinsured Motorist' law." We must determine whether this exclusion was valid under former R.C. 3937.18(C).
 {¶ 14} In Linko v. Indemnity Ins. Co. of N.America,[9] the Ohio Supreme Court held that in order to satisfy the offer requirement of former R.C. 3937.18, the insurer had to inform the insured of the availability of UM/UIM coverage, set forth the premium, include a description of the coverage, and expressly state the coverage limits in its offer. FollowingLinko, this court held that "the four corners of the policy, at the very least, had to include a written rejection of UM/UIM coverage signed by the insured."[10]
 {¶ 15} The National Union policy contained a description of UM/UIM coverage, but did not otherwise satisfy the Linko
requirements regarding the UM/UIM premium and coverage limits. Nor did the policy contain a written rejection of UM/UIM coverage signed by the insured. Accordingly, because National Union failed to satisfy the offer and rejection requirements of former R.C.3937.18(C), we hold that UM/UIM coverage arose by operation of law under the umbrella policy.[11]
 {¶ 16} Having concluded that UM/UIM coverage arose by operation of law, we must now determine whether the decedent was an insured under the National Union policy. The named insured under the policy was Morgan Tire. The policy defined an insured under Coverage A as the named insured or a person that was an insured under the scheduled underlying insurance. The policy definition under Coverage B was broader and included the named insured and its employees while acting within the scope of their duties. But because the policy did not contain a definition of who was an insured for purposes of UM/UIM coverage, we conclude that neither of the definitions of insureds under Coverages A or B applied to UM/UIM coverage, which arose by operation of law.[12] In the absence of any express policy limitations on the definition of an insured for purposes of UM/UIM coverage, we hold that the decedent was an insured under the policy.
 {¶ 17} Although we have determined that the decedent was an insured under the National Union policy for purposes of UM/UIM coverage that arose by operation of law, our analysis does not end there. The Ohio Supreme Court has held that "absent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurs within the course and scope of employment."[13] We must now address the issue of whether the decedent was acting within the course and scope of his employment at the time of the accident.
 {¶ 18} The trial court concluded that no UM/UIM coverage was available under the underlying USFG business auto policy because the decedent was not occupying a "covered auto" for purposes of that policy, and that, therefore, no coverage existed under the National Union policy. As a result, the trial court did not reach the issue of whether the decedent was acting within the course and scope of his employment. But because we have held that coverage arose under Linko, we must address the issue.
 {¶ 19} As the party seeking summary judgment, National Union was required to inform the court of the basis for its motion and to identify "those portions of `the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believe[d] demonstrate[d] the absence of a genuine issue of material fact."[14] While it was not necessary for National Union to present affirmative evidence to negate Kremer's claim, it was necessary for National Union to point to "those portions of the record" demonstrating that Kremer had not created an issue of fact that would have precluded judgment in the insurer's favor as a matter of law.[15] The only evidentiary material included in National Union's motion was its insurance policy with Morgan Tire. National Union pointed to no portion of the record that demonstrated that Kremer had failed to create an issue of fact as to whether he was acting within the course and scope of his employment at the time of the accident.
 {¶ 20} In Kremer's response to National Union's motion, he included the affidavit of Tom Patton, a Morgan Tire employee who supervised store managers, including the decedent. Patton averred that, as a store manager, the decedent's responsibilities included the deposit of the day's receipts, and that he was aware that, at the time of the accident, the decedent was in possession of the day's receipts as well as a bank deposit ticket. Because the record before the trial court demonstrated that a question of fact remained as to whether the decedent was acting within the scope of his employment at the time of the accident, we hold that the trial court improperly granted summary judgment in favor of National Union. We sustain Kremer's second assignment of error.
 {¶ 21} As we have stated, the trial court determined that no UM/UIM coverage was available under the National Union policy because no such coverage existed under the underlying USFG business auto policy. In its first cross-assignment of error, National Union argues that the trial court erred by failing to conclude that there was no coverage under the National Union policy for a different reason — because Kremer had failed to exhaust the coverage under the primary USFG policy. But we decline to address this assignment of error, as the parties have not had an opportunity to fully argue on appeal the existence of any exhaustion requirement with respect to the UM/UIM coverage that we have held to exist by operation of law under the National Union policy. A remand to the trial court to determine this issue is appropriate.[16]
 {¶ 22} In its second cross-assignment of error, National Union argues that the trial court erred in failing to find that Kentucky law applied because the decedent lived in Kentucky. InOhayon v. Safeco Ins. Co. of Illinois,[17] the Ohio Supreme Court considered the factors in the Restatement of the Law 2d, Conflict of Laws (1971) 8, Section 188, to resolve a choice-of-law issue in an action by insureds against their insurance carrier for payment of UIM benefits: "Section 188 provides that, in the absence of an effective choice of law by the parties, their rights and duties under the contract are determined by the law of the state that, with respect to that issue, has `the most significant relationship to the transaction and the parties.' * * * [C]ourts should consider the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the domicile, residence, nationality, place of incorporation, and place of business of the parties."[18] The court noted that the rights created by an insurance contract should be determined by the law of the state that the parties understood would be the principal location of the insured risk.[19]
 {¶ 23} In this case, the only relationship Kentucky may have had to the transaction between Morgan Tire and National Union was that the decedent resided there. The contract between Morgan Tire and National Union was negotiated in Florida. But the accident occurred in Ohio; the decedent worked at a Morgan Tire location in Ohio; and the decedent was purportedly using his motorcycle in the scope of his employment at an Ohio location. Accordingly, we cannot say that the trial court erred by applying Ohio, rather than Kentucky, law. We overrule the second cross-assignment of error.
 {¶ 24} In its third cross-assignment of error, National Union argues that the trial court erred in failing to conclude that Kremer had presented insufficient evidence that he was in the course and scope of his employment at the time of the accident. As we have already discussed, a question of fact remained as to whether the decedent was acting in the course of his employment with Morgan Tire. Accordingly, we overrule this assignment of error based upon our disposition of Kremer's second assignment of error.
 {¶ 25} Accordingly, we affirm the trial court's grant of summary judgment in favor of Brian White, and we reverse the trial court's grant of summary judgment in favor of National Union. We remand this case for further proceedings in accordance with law.
Judgment accordingly.
Hildebrandt and Gorman, JJ., concur.
[2] See Doe v. Shaffer, 90 Ohio St.3d 388, 390,2000-Ohio-186, 738 N.E.2d 1243.
[3] See Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105,1996-Ohio-336, 671 N.E.2d 241.
[4] See Erdman v. Mestrovich (1951), 155 Ohio St. 85,97 N.E.2d 674, paragraph two of the syllabus.
[5] See Geis v. Sutton (Dec. 14, 2001), 6th Dist. No. L-01-1313.
[6] See Ross v. Farmers Ins. Group of Cos.,82 Ohio St.3d 281, 1998-Ohio-381, 695 N.E.2d 732, syllabus.
[7] See Roper v. State Auto Mut. Ins. Co., 1st Dist. No. C-010117, 2002-Ohio-3283.
[9] 90 Ohio St.3d 445, 2000-Ohio-92, 739 N.E.2d 338.
[10] See Roper, supra, at ¶ 41.
[11] See, e.g., Gyori v. Johnston Coca-Cola Bottling Group,Inc., 76 Ohio St.3d 565, 1996-Ohio-358, 669 N.E.2d 824.
[12] See, Roper, supra, at ¶ 43.
[13] Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216,2003-Ohio-5849, 797 N.E.2d 1256, paragraph two of syllabus.
[14] Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 114,526 N.E.2d 798, citing Celotex v. Catrett (1986), 477 U.S. 317,323, 106 S.Ct. 2548.
[15] See Kelly v. Coca-Cola Bottling Co., 1st Dist. No. C-030770, 2004-Ohio-3500, citing Drescher v. Burt,75 Ohio St.3d 280, 292, 1996-Ohio-107, 662 N.E.2d 264.
[16] See, e.g., McRoberts v. Kemper Risk Mgmt., 1st Dist. No. C-030115, 2003-Ohio-5517 (remand appropriate where issues not fully argued on appeal).
[17] 91 Ohio St.3d 474, 2001-Ohio-100, 747 N.E.2d 206.
[18] Id. at 477, 2001-Ohio-100, 747 N.E.2d 206.
[19] Id. at 479, 2001-Ohio-100, 747 N.E.2d 206.