**BYRD et al.**

v.

**SMITH et al.**

Court of Common Pleas of Ohio,
Clermont County.

No. 2000 CVC 0891.

Decided July 24, 2007.

4

Gary A. Rosenhoffer, for plaintiffs.

Reminger & Reminger Co., L.P.A., and Robert W. Hojnoski, for defendant Continental Casualty Company.

HADDAD, Judge.

{¶ 1} This matter came before the court on June 27, 2007, pursuant to a motion for summary judgment filed by the defendant Continental Casualty Company. The claims against the defendants Glenn Smith and Marsha Abbott were dismissed with prejudice on March 18, 2002. The court granted the defendant John R. Jurgensen Company's motion for summary judgment on January 20, 2004, thus removing John R. Jurgensen Company from the case. The Plumbers, Pipe Fitters and Mechanical Service Local Union Local No. 392 Health and Welfare Fund joined the action as party plaintiff on October 27, 2000, and the Plumbers, Pipe Fitters and Mechanical Service Local Union Local No. 392 Pension Fund was dismissed as a defendant on May 8, 2001. The defendant Medical Mutual of Ohio is currently a party to the action; however, nothing has been filed by or against Medical Mutual since the original complaint, filed on October 6, 2000. The parties have briefed their positions, and upon hearing oral arguments, the court took the matter under advisement and now renders the following decision.

## FINDINGS OF FACT

{¶ 2} This case arises from injuries allegedly sustained by the plaintiff Bryan Byrd as a result of an automobile collision with the defendant Glenn Smith. The collision occurred on August 3, 2000, when the pick-up truck operated by Smith went left of center and collided with the van operated by the plaintiff. The van that the plaintiff was operating was being leased by the plaintiff's employer, Fred

B. DeBra Co. ("DeBra"). The van was insured by a commercial automobile policy issued by the defendant Continental Casualty Company ("Continental"), to DeBra's parent company, Emcor Group, Inc. ("Emcor"). The plaintiffs have settled their claims against the tortfeasor and are now seeking uninsured-/underinsured-motorist ("UM/UIM") coverage under the Continental policy.

{¶ 3} The plaintiff testified in his May 25, 2001 deposition ("Byrd I") and in his February 6, 2007 deposition ("Byrd III") that he was traveling home from his father-in-law's house at the time the collision occurred. Byrd testified that he had left work earlier in the day and stopped in Williamsburg, Ohio, to pick up an automobile part for his brother-in-law's car. Id. He proceeded to Bethel, Ohio, where he dropped the part off at his father-in-law's house. Id. Byrd was employed in the heating and air industry and had been installing commercial heating and air units, hanging duct work, and doing electrical work on the date the collision occurred.

{¶ 4} Byrd was deposed again on September 9, 2002 ("Byrd II"), but the deposition was limited primarily to the injuries that Byrd sustained as a result of the collision. There was also some discussion about how the collision occurred.

{¶ 5} Continental filed a motion for summary judgment on January 26, 2004. Continental argued that Byrd was not in the course and scope of employment at the time the collision occurred. The motion was supported by the depositions of Byrd. Byrd then filed a motion for summary judgment on the issue of coverage on February 3, 2004. The motion was supported by the affidavit of Byrd. Byrd asserted in the affidavit that he wore a pager during his employment with DeBra and would receive and respond to pages during and outside "normal" working hours. He also asserted that he drove a vehicle with a sign painted on the side stating that DeBra was available for 24–hour service. Byrd stated that he was "working and advertising for The Fred DeBra Company" whenever he was driving a company vehicle with such signage.

{¶ 6} The court granted Continental's motion for summary judgment and found that Byrd was not within the course and scope of employment at the time the collision occurred. This finding was based upon the fact that Byrd admitted in his depositions that he was traveling home from his father-in-law's house at the time the collision occurred. The trial court, in its decision, did not mention whether it had considered the plaintiff's affidavit. Byrd appealed the decision, and the Twelfth District Court of Appeals affirmed.

{¶ 7} The Ohio Supreme Court was then presented with a certified question as to "whether it is proper for courts to disregard an affidavit inconsistent with or contradictory to prior deposition testimony when ruling on a motion for summary judgment." The Supreme Court held that a supplemental affidavit must be considered by a trial court when ruling on a motion for summary judgment. It

further found that a contradictory affidavit made by the nonmoving party must also be considered by a trial court when ruling on a motion for summary judgment, but only if the nonmoving party sufficiently explains the contradiction. However, the Supreme Court held that a contradictory affidavit made by the moving party will preclude summary judgment in favor of the moving party. Pursuant to its holding, the Supreme Court reversed the judgment of the Twelfth District Court of Appeals and remanded the matter to the trial court for a determination as to whether Byrd's affidavit was contradictory or supplemental to the earlier sworn testimony. Upon remand, the trial court found that Byrd's affidavit was supplemental to his earlier depositions and denied Continental's motion for summary judgment.

{¶ 8} This case was originally filed under the authority of the Supreme Court's holding in *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116. However, the Supreme Court narrowed this holding during the course of this case in *Westfield Ins. Co. v. Galatis* (2003), 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256. The Supreme Court held that an insurance policy naming a corporation as an insured for UM/UIM purposes covers a loss sustained by an employee of the corporation only if the loss occurred within the course and scope of employment. Id. The defendants had not deposed Byrd on the issue of course and scope of employment prior to their first motion for summary judgment because this was not an issue under *Scott–Pontzer*. Course and scope of employment did not become an issue until November 2003, when the Supreme Court ruled on *Galatis*.

{¶ 9} Byrd's third deposition was taken on February 6, 2007 ("Byrd III"), and Byrd testified for the first time on the issue of course and scope of employment. Byrd testified that at the time of this accident, he was a third-year apprentice in the field of mechanical-equipment service. Byrd testified that his standard work hours were from 7:30 a.m. to 4:00 p.m. and that he rarely received overtime pay. Byrd testified that he would get up in the mornings and take the DeBra van directly to the job site. He would call in to the shop at the end of each day to see which job site he was to report to the next morning. However, Byrd stated that he had been working at the same job site (America Showa in Blanchester) for ten to 12 months prior to and including the date of the collision. He worked eight-hour days while at the America Showa site.

{¶ 10} Byrd testified that he was given unfettered use of the company van while working for DeBra. There were no stipulations or restrictions on the use of the van. He also testified that he carried a pager so that someone from the company could notify him if there was a schedule change or a change in job location. Byrd testified that as an apprentice, he never experienced a situation where he got a page in the middle of the night and had to report to a job site

immediately. He could not recall whether he ever received pages on the weekend or during the evening, but he would be required to respond to pages whenever they were received.[1] He testified that prior to his service at America Showa, he would receive pages early in the morning or later in the evening, changing only the job site. He also testified that these pages did not alter the hours he normally worked. He further testified that while at America Showa, his time schedule did not vary. Byrd testified that as an apprentice, he did not experience receiving a page that would require him to respond to a call beyond normal working hours. Byrd further testified that there was a sign on the side of the van stating that DeBra's services were available 24 hours a day. Byrd considered himself to be on call 24 hours a day, which is why a pager was provided.

{¶ 11} Byrd testified that on the date of the collision, he left America Showa in Blanchester at 4:00 p.m., picked up an automobile part at East Fork Precision Welding in Williamsburg, and dropped the automobile part off at his father-in-law's house in Bethel. He then left his father-in-law's house to go to his own house in Withamsville. The collision occurred after he left his father-in-law's house. Byrd testified that he was not responding to a page and had not received any pages since leaving America Showa at 4:00 p.m. Byrd further testified that his unfettered use of the company van was a benefit to him and that DeBra received no benefit from his use of the vehicle while running personal errands. Byrd further testified that he was not being paid for his services at the time the collision occurred, and he was not responding to a page. Byrd admitted in the deposition that he was running a personal errand at the time of the collision, and his activities had nothing to do with his job.

{¶ 12} Continental has now filed this motion for summary judgment as a result of the information obtained in Byrd III.

## THE LEGAL STANDARD

{¶ 13} In considering a motion for summary judgment, the court will look at the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact. Civ.R. 56(C). According to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party, who is

---

1. "Respond" in the context of Byrd's affidavit of February 3, 2004, and Byrd III only contemplates his calling in to the Fred DeBra Company when paged and not his actually returning to work on a service call outside his normal working hours.

entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46. The party requesting summary judgment bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Id. at 66, 8 O.O.3d 73, 375 N.E.2d 46; *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264. In determining whether a genuine issue of material fact exists, the court must answer the following inquiry: "Does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law?" *Wilson v. Maple,* Clermont App. No. CA2005–08–075, 2006-Ohio-3536, 2006 WL 1880505, at ¶ 18, citing *Turner v. Turner* (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123. The moving party cannot discharge its initial burden by making conclusory assertions that the nonmoving party has no evidence to prove its case. *Dresher* at 293, 662 N.E.2d 264. The moving party must specifically point to evidence that affirmatively demonstrates that the nonmoving party has no evidence to support its claim. Id.

{¶ 14} Once the moving party satisfies its burden, "the nonmoving party may not rest on the mere allegations of his pleading, but his response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing the existence of a genuine triable issue." Civ.R. 56(E); *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 359, 604 N.E.2d 138.

## LEGAL ANALYSIS

{¶ 15} The court notes that the UM/UIM coverage in this case was made a part of the Emcor policy pursuant to former R.C. 3937.18 (prior to Am.Sub.S.B. No. 57 version of R.C. 3937.18, effective November 2, 1999, Am.Sub.S.B. No. 267 version of R.C. 3937.18, effective September 21, 2000, and Am.Sub.S.B. No. 97 version of R.C. 3937.18, effective October 31, 2001), which provided that UM/UIM coverage must be offered to the insured unless the insured rejects such coverage. The plaintiff argues that he is entitled to this UM/UIM coverage under the authority of *Scott–Pontzer,* 85 Ohio St.3d 660, 710 N.E.2d 1116. In *Scott–Pontzer,* the Ohio Supreme Court held that an employee of a corporation qualifies as insured for UM/UIM purposes under a policy with the corporation named as the insured party even when the employee is not acting within the course and scope of his or her employment. Id. at 664–666, 710 N.E.2d 1116. However, the Supreme Court limited its holding in *Scott–Pontzer* when it decided *Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256. In *Galatis,* the Supreme Court held that absent language to the contrary, an insurance policy with the corpora-

tion as the insured party for UM/UIM purposes covers a loss sustained by an employee only if the employee is within the course and scope of employment. Id. at ¶ 2 of the syllabus. The court has reviewed the insurance policy presented in this case and can find no exception to the course-and-scope-of-employment requirement; therefore, the court must analyze this case under *Galatis.*

{¶ 16} The defendant argues that the plaintiff is not entitled to UM/UIM coverage because he was not acting within the course and scope of his employment when the collision occurred, as required by *Galatis.* The defendant argues that reasonable minds could conclude only that Byrd was not in the course and scope of his employment and that Continental is entitled to judgment as a matter of law.

{¶ 17} The plaintiff argues in his response that Continental's motion should be overruled because it was not timely filed. The plaintiff asserts that because this action has been set for trial, a motion for summary judgment may be made only with leave of court. The plaintiff contends that this case has been set for a jury trial since November 8, 2006, and Continental did not seek nor obtain leave of court to file this motion for summary judgment. The court would like to note that the trial has actually been set since November 7, 2006, with notice being filed on November 8, 2006.

{¶ 18} The court ruled on the record on June 27, 2007, that Continental had requested leave of court to file this motion for summary judgment at a scheduling conference held on May 17, 2007. The court further held that it granted leave to file this motion for summary judgment at that same scheduling conference. On that date, the parties discussed the issue of summary judgment, and a hearing on the motion was set despite the fact that Continental's motion had yet to be filed. The court found that its actions constituted leave of court to file the motion.

{¶ 19} However, the court finds that it did not have to expressly grant leave to file the motion because it has been held that the acceptance of the motion by the court after the case has been set for pretrial is in itself leave of the court, even if there is no formal writing seeking leave. *Juergens v. Strang, Klubnik & Assoc., Inc.* (1994), 96 Ohio App.3d 223, 234, 644 N.E.2d 1066. The acceptance of the motion by the court is by itself "leave of court." Id. Further, it is within the court's discretion to grant leave to file a motion for summary judgment by simply ruling on the merits of the motion. *Woodman v. Tubbs Jones* (1995), 103 Ohio App.3d 577, 582, 660 N.E.2d 520. This means that the trial court could grant leave to file by simply ruling on the motion for summary judgment. Id. However, to the extent necessary, the court hereby grants leave of court to the defendant to file its motion for summary judgment.

{¶ 20} The plaintiff also argues in his response that the law-of-the-case doctrine bars Continental's motion for summary judgment. The plaintiff argues that the original trial court overruled, in his written decision on September 26, 2006, virtually the same motion that is before the court today. The plaintiff contends that for this court to grant summary judgment, it would have to find that the original trial court's decision was erroneous.

{¶ 21} The law-of-the-case doctrine provides that "the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent [legal] proceedings in the case at both the trial and reviewing levels." *Nolan v. Nolan* (1984), 11 Ohio St.3d 1, 3, 11 OBR 1, 462 N.E.2d 410. "A lower court has no discretion, absent extraordinary circumstances, to disregard the mandate of a superior court in a prior appeal in the same case." *State ex rel. Potain v. Mathews* (1979), 59 Ohio St.2d 29, 32, 13 O.O.3d 17, 391 N.E.2d 343. The rule ensures consistency of results, avoids endless litigation by settling the issues, and preserves the structure of superior and inferior courts. The doctrine is necessary to preserve the structure of the judiciary. Id. "In pursuit of these goals, the doctrine functions to compel trial courts to follow the mandates of reviewing courts." *Nolan* at 3, 11 OBR 1, 462 N.E.2d 410. However, the doctrine is considered to be a rule of practice and not a binding rule of substantive law. It will not be applied to achieve unjust results. Id.

{¶ 22} The court agrees with the defendant that the doctrine does not apply in this case. The law-of-the-case doctrine applies when an appellate court has decided the legal issue that is currently before the court. This has not occurred in this case. The Supreme Court did not hear arguments on the issue of course and scope of employment, nor did it rule on that issue. The only legal issue resolved by the Supreme Court was whether Byrd's affidavit had to be considered in granting or denying the parties' motions for summary judgment. Upon remand, the trial court complied with the Supreme Court's instruction when it found Byrd's affidavit to be supplemental with his prior depositions.

{¶ 23} The plaintiff argues, however, that the law-of-the-case doctrine has been extended to encompass a lower court's adherence to its own prior ruling or to the ruling of another court in the same case. The plaintiff cites *Poluse v. Youngstown* (1999), 135 Ohio App.3d 720, 725, 735 N.E.2d 505. The court notes, however, that the Seventh District Court of Appeals found that this doctrine "should not be taken to imply that a trial court can never, under any circumstances, reconsider its prior rulings." Id., quoting *Clymer v. Clymer* (Sept. 26, 1995), Franklin App. No. 95APF02–239, 1995 WL 571445. The court in *Poluse* found that regarding a summary judgment motion, an order overruling such a motion is subject to revision by the trial court at any time prior to entry of final

judgment. Id. "A wide degree of freedom is often appropriate when the same question is presented to different judges of a single district court. Substantial freedom is desirable, particularly since continued proceedings may often provide a much improved foundation for deciding the same issue." *State ex rel. Dannaher v. Crawford* (1997), 78 Ohio St.3d 391, 395, 678 N.E.2d 549, citing 18 Wright, Miller & Cooper, Federal Practice & Procedure (1981) 794, Section 4478.

{¶ 24} The court notes that even if the doctrine were to be extended to courts of equal standing, it would not apply to this case. The plaintiff argues that because the facts remain essentially the same as those before the original trial court, "the law of the case doctrine prohibits this Court from granting summary judgment." The court finds that this statement is not accurate. When the trial court originally ruled on the motions for summary judgment on September 25, 2006, it had before it two depositions of Bryan Byrd, neither of which involved the issue of course and scope of employment, and an affidavit that supplemented those depositions. The trial court found that the affidavit created a genuine issue of material fact as to the course and scope of employment because the issue was not discussed during the first two depositions. Since that time, a third deposition has been taken. The court has before it today the first two depositions, the affidavit of Bryan Byrd, and a new deposition on the issue of course and scope of employment. New facts have been presented to this court that were not available when the original trial court denied summary judgment—facts that the plaintiff would not permit to be discussed and made available to the original trial court during Byrd's first two depositions because course and scope of employment were not requirements under *Scott–Pontzer*. The court has been presented with newly discovered evidence that Byrd was not within the course and scope of employment at the time the collision occurred. Therefore, the court finds that the plaintiff's argument is without merit. The law-of-the-case doctrine does not preclude this court from ruling on the defendant's motion for summary judgment.

{¶ 25} The plaintiff next argues that applying *Galatis* to this case would be in derogation of the ex post facto law and/or retroactive-law provisions of the Constitutions of the United States and the state of Ohio. The plaintiff cites *Marra v. Nationwide Ins. Co.*, Mahoning App. No. 05–MA–216, 2007-Ohio-356, 2007 WL 210941, for the proposition that the law to be applied in this case is the law that was in effect at the time the cause of action arose. The court finds that *Marra* does stand for this proposition of law in the context of statutory law, but not for case law. The *Marra* court found that "for the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." Id. at ¶ 21, quoting *Ross v. Farmers Ins. Group of Cos.* (1998), 82 Ohio St.3d 281, 695 N.E.2d 732,

syllabus. The trial court did not reach the issue of course and scope of employment, so the court of appeals did not consider the issue. The court of appeals resolved the coverage issue only and remanded to the trial court for proceedings regarding whether the plaintiff was working within the course and scope of his employment as required by *Galatis*. Id. at ¶ 63–64. *Galatis* was not the law at the time the collision occurred in *Marra*, yet the court remanded for a determination from the trial court pursuant to *Galatis*. This indicates to the court that while the *Marra* court was not willing to apply statutory law retroactively, it would in fact apply case law retroactively.

{¶ 26} Further, the Supreme Court has held that "the general rule is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former was bad law, but that it never was the law." *Peerless Elec. Co. v. Bowers* (1955), 164 Ohio St. 209, 57 O.O. 411, 129 N.E.2d 467. The Supreme Court stated in a more recent case that it applied *Galatis* to all pending cases in which a party had asserted a *Scott–Pontzer* cause of action but had not sustained injury while acting within the course and scope of employment at the time of the accident. *Hopkins v. Dyer* (2004), 104 Ohio St.3d 461, 2004-Ohio-6769, 820 N.E.2d 329, ¶ 18, citing *In re Uninsured & Underinsured Motorist Coverage Cases* (2003), 100 Ohio St.3d 302, 2003-Ohio-5888, 798 N.E.2d 1077. See also *Daniels v. Citizens Ins. Co. of Ohio*, Madison App. No. CA2005–03–008, 2005-Ohio-6166, 2005 WL 3097878, at ¶ 17 ("we cannot ignore *Galatis* and the Supreme Court's direction to apply *Galatis* retrospectively").

{¶ 27} The retroactive application of *Galatis* has been debated in numerous Ohio courts, and arguments against retroactive application of *Galatis* have been consistently rejected. Even the Ohio Supreme Court has applied *Galatis* to its pending cases. The plaintiff's argument that *Galatis* is "judicial legislation" that should be treated the same as a law enacted by the legislature is misplaced. The plaintiff readily admits that there is a body of law that is contrary to his argument, but suggests that this court modify or reverse that existing body of law. The court is not prepared to do this. The Supreme Court has spoken on the issue, and this court is inclined to follow the example of the Supreme Court. The plaintiff's argument that application of *Galatis* to this case is unconstitutional is hereby rejected.

{¶ 28} The plaintiff also argues that UM/UIM coverage protects people, not vehicles, against tortfeasors who are either uninsured or underinsured. He further argues that absent a valid rejection of UM/UIM coverage, UM/UIM coverage became a part of the liability policy pursuant to Ohio law at the time the collision occurred. The plaintiff argues that Continental has never disputed that the vehicle was insured under the UM/UIM provisions of the policy or that Bryan

Byrd was a permissive user of the insured van. He argues that this a pure UM/UIM case and *Galatis* should not apply.

██ {¶ 29} The court agrees with the plaintiff that UM/UIM coverage became a part of the liability policy pursuant to Ohio's UM/UIM statute as it was written. However, the court finds that the determination of which version of R.C. 3937.18 applies is based upon the date the insurance contract became effective and not the date of the collision. *Kremer v. White,* Hamilton App. Nos. C–030801, C–030802, and C–030843, 2004-Ohio-6154, 2004 WL 2626822, at ¶ 8, and *Marra v. Nationwide Ins. Co.,* Mahoning App. No. 05–MA–216, 2007-Ohio-356, 2007 WL 210941, at ¶ 21. (See former R.C. 3937.18, prior to Am.Sub.S.B. No. 57 version of R.C. 3937.18, effective November 2, 1999, Am.Sub.S.B. No. 267 version of R.C. 3937.18, effective September 21, 2000, and Am.Sub.S.B. No. 97 version of R.C. 3937.18, effective October 31, 2001.) Likewise, the court does not dispute that UM/UIM coverage protects people, not vehicles. The court also takes note of the fact that the defendant has not disputed that the van was a covered vehicle under the policy or that the plaintiff was driving the van with permission. However, this is not relevant to the issue of course and scope of employment. The plaintiff asserts that this is a pure UM/UIM case and that Byrd should be entitled to benefits simply because he was in his company vehicle. However, the Supreme Court has told us that this is no longer the law. Pursuant to *Galatis,* which governs this case, Byrd is not entitled to UM/UIM benefits unless he was within the course and scope of employment when the collision occurred. With that being said, the court finds that this is not a pure UM/UIM case, and the plaintiff is entitled to benefits only if he was within the course and scope of his employment when the collision occurred.

██ {¶ 30} As a general matter, conduct is within the course and scope of employment if (1) it is of the kind the employee is employed to perform, (2) it occurs substantially within the authorized time and space limits, and (3) it is actuated, at least in part, by a purpose to serve the master. *Hale v. Spitzer Dodge, Inc.,* Franklin App. No. 04AP–1379, 2006-Ohio-3309, 2006 WL 1781402, ¶ 20, citing Restatement of the Law 2d, Agency (1957), Section 228. The plaintiff argues that *Hale* is distinguishable from this case because *Hale* is a negligence/liability case and not an UM/UIM case. The court recognizes that *Hale* is a respondeat superior liability case; however, the issue of course and scope of employment does not differ based upon the underlying claim. Therefore, the distinction made by the plaintiff is not controlling in this case.

{¶ 31} The *Hale* case involved a car salesman who was driving a demonstrator vehicle to run personal errands when he was involved in an automobile collision. The demonstrator car had dealer plates on the back, a dealer logo on the front license plate, and a price sticker in the window. Whenever the salesman would

park the vehicle, he would hang a tag from the rearview mirror displaying the words "Red Hot Savings." He would attach his business card to the tag. The collision occurred on the salesman's regularly scheduled day off from his job. He was driving to the dry cleaners in the demonstrator car when he collided with the rear of another vehicle. According to the salesman, the purpose of his driving the car was to increase recognition and awareness and to sell the car whenever possible. He also admitted in a deposition that one purpose was employee benefit. *Hale*, 2006-Ohio-3309, 2006 WL 1781402, at ¶ 4. The court found that the dealership derived some benefit from the advertising on the vehicle and that the salesman was constantly prospecting for clients whether at work or at home; however, the evidence was insufficient, as a matter of law, to find that the salesman was within the course and scope of employment at the time the collision occurred. Id. at ¶ 26. At the time of the accident, the salesman was not driving to or from work and was not demonstrating the vehicle, nor was he on his way to show the vehicle to a prospective client, and there was no evidence that he intended to show the vehicle that day. Instead, he was on a personal errand. Id. This was not the type of conduct he was employed to do, nor did it occur substantially within time and space limits. Id.

{¶ 32} The *Hale* court also rejected the argument that an employee "on call 24 hours a day, 7 days a week," but engaged in purely personal conduct at the time of the accident, is engaged in conduct within the course and scope of his employment. Id. at ¶ 28, quoting *Le Elder v. Rice* (Cal.App.1994), 21 Cal.App.4th 1604, 26 Cal.Rptr.2d 749, 751 (employee on personal errand not acting within course and scope of employment even though his job required him to be on call at all hours every day. " 'Public policy would be ill-served by a rule establishing 24–hour employer liability for on-call employees, regardless of the nature of the employees' activities at the time of an accident' "), and *W. Natl. Mut. Ins. Co. v. United States* (D.Minn.1997), 964 F.Supp. 295, 298 (although employee was on call, "on-call accessibility of an employee does not transform purely private activities at home into company business").

{¶ 33} The court must now analyze whether Byrd's conduct satisfies the restatement test for course and scope of employment. The court must first determine whether Byrd's conduct at the time of the collision was of the kind that he was employed to perform. Byrd's position with DeBra required him to install and maintain commercial heating and air units. According to Byrd's deposition, he did this at the America Showa jobsite until approximately 4:00 p.m. on the date of the collision. He left America Showa at approximately 4:00 p.m. and went to an auto body shop to pick up an automobile part. He left there after a brief period of socializing to deliver the part to his father-in-law. Again, he socialized for a brief period and left his father-in-law's house to go home. He was traveling

home when the collision occurred. It is clear to the court that Byrd was employed by DeBra to install and repair heating and air units, and not to retrieve and deliver automobile parts for his family members. Therefore, the court finds that Byrd's conduct was not of the kind that he was employed to perform.

{¶ 34} Next, the court must determine whether the conduct occurred substantially within the authorized time and space limits. Byrd testified in his deposition that he worked from approximately 7:30 a.m. to 4:00 p.m. on the date of the collision. He left at approximately 4:00 p.m. that day to run personal errands. It was on his way home from his father-in-law's house that the collision occurred, which was approximately three and one half hours after leaving work. Byrd testified that he rarely received overtime pay and worked eight hours per day while working at the America Showa jobsite. He was at America Showa for approximately ten to 12 months prior to the August 3, 2000 date. Byrd also testified that he was not responding to a page at the time the collision occurred. It is also important to note that Byrd admits that he was not being paid for his services at the time of the collision. This indicates that he was not acting within the time constraints of his employment. Because the plaintiff admits that he was running a personal errand approximately three and one half hours after leaving work and that he was not responding to a page, nor was he being paid, the court finds that the conduct occurred outside the authorized time and space limits imposed by his employer.

{¶ 35} The plaintiff, however, feels that because he was driving a van with signage indicating that DeBra was available 24 hours per day and seven days per week and because he was carrying a company pager, he was a 24–hour employee. The court finds, consistent with *Hale,* that this signage is incidental advertising and does not bring Byrd within the course and scope of his employment. The court agrees with the defendant that if it were to find otherwise, any time a person operated a vehicle containing such advertisements, he or she would be considered an agent or employee of the advertiser. Likewise, the court agrees with the holding in *Hale* that the fact that Byrd was carrying a pager and was available to respond 24 hours per day does not make him a 24–hour employee. If that were the case, any employer that issues company pagers would be liable for the acts of their employees at all times. There would never be an instance when the employer would not be liable. The court, therefore, finds that the signage was incidental advertising that does not bring Byrd within the course and scope of his employment. The court further finds that carrying a company pager does not bring Byrd within the course and scope of employment unless he was responding to a page, which he admits he was not.

{¶ 36} Finally, the conduct must have been actuated, at least in part, by a purpose to serve DeBra. While it may be true that DeBra received some benefit

16

from Byrd's use of the van, i.e., his being able to get to a job site quicker than he would if he had to drive to the office to pick up the van, the court finds that Byrd's conduct at the time in question did not and was not intended to benefit DeBra. Byrd admits that he picked up the automobile part for the benefit of his brother-in-law, and not his employer. Further, he admits in his deposition that DeBra received no benefit from his action at the time the collision occurred.

{¶ 37} The court notes the similarities between this case and *Hale.* Like in *Hale,* Byrd was driving a vehicle owned and insured by his employer and given to him for unfettered use. Byrd's collision, like in *Hale,* did not occur within Byrd's normal working hours. The collision occurred while Byrd, like the salesman in *Hale,* was running a purely personal errand. The vehicle driven by Byrd contained an advertisement for the company on the outside, just like in *Hale.* Also like in *Hale,* Byrd was carrying a pager and believed himself to be a 24-hour employee. Finally, Byrd was not being paid for his time when the collision occurred, much like the defendant in *Hale.* The court finds, consistent with the holding in *Hale,* that Byrd was not within the course and scope of his employment with DeBra at the time of the collision. Therefore, Byrd is not entitled to UM/UIM benefits under the Emcor policy.

{¶ 38} The plaintiff points to appellate cases in support of his argument that the defendant's motion should be denied. The first case the plaintiff cites is *Kremer v. White,* Hamilton App. Nos. C–030801, C–030802, and C–030843, 2004-Ohio-6154, 2004 WL 2626822. In *Kremer,* the decedent was riding a motorcycle when he was struck by a pickup truck. He then lost control of his motorcycle and crossed into the path of White. Kremer worked as a store manager, and part of his responsibilities included the deposit of the day's receipts. At the time of the collision, Kremer was in possession of the receipts and a deposit slip. The *Kremer* court found that this created a question of fact as to whether the decedent was acting within the course and scope of his employment.

{¶ 39} The court first notes that the collision in *Kremer* occurred prior to *Galatis,* yet the *Kremer* court applied *Galatis* retroactively. In addition, the court notes that this case is factually distinguishable from the case at hand. In *Kremer,* it was not clear whether Kremer was on his way to the bank when the accident occurred or whether he was running a personal errand. In the current case, Byrd admits in his deposition that he was running a purely personal errand, i.e., picking up an automobile part and dropping it off at his father-in-law's house, when the collision occurred. He also admits that he was not responding to a page from his employer or traveling to a work location. Byrd admits that he was not performing any services at the direction of his employer when the collision occurred. He was simply on his way home from his father-in-law's house. The *Kremer* court, on the other hand, did not have such dispositive facts before it.

{¶ 40} The plaintiff also cites *Takacs v. Keller* (Jan. 2, 1997), Lorain App. No. 96CA006411, 1997 WL 10145. In *Takacs,* a pizza delivery person became ill while working a shift at Domino's. The manager told him to go to the pharmacy to get some medication. The manager told him to use money from his Domino's change wallet to purchase the medication. He did not punch out on the time clock before he left for the pharmacy. On his way to the pharmacy, he was involved in an automobile collision with Takacs, who was on a motorcycle. Takacs brought an action against the driver and his employer for the payment of expenses relating to the accident. The driver operated his own automobile, with a Domino's sign affixed to the roof. The jury determined that the driver was acting within the course and scope of his employment at the time the collision occurred.

{¶ 41} Again, this case is distinguishable from the case at hand. The delivery driver in *Takacs* was driving his own vehicle, not a company vehicle as in our case. He was also still on the clock when the collision occurred. Byrd admits in our case that he was not within "normal" working hours when the collision occurred, nor was he being paid. The pizza delivery driver was also on the way to the pharmacy at the direction of his employer. Byrd's employer, on the other hand, did not direct him to run personal errands after "clocking out" of work. Byrd admitted that he was conferring no benefit on his employer.

## CONCLUSION

{¶ 42} In light of the foregoing analysis, and based upon the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, reasonable minds could conclude only that Byrd was outside the course and scope of his employment at the time the collision occurred, and, thus, Continental is entitled to judgment as a matter of law. The court hereby grants Continental's motion for summary judgment.

Judgment accordingly.